99-00348 Olivares v State of Texas.wpd



No. 04-99-00348-CR



Jose Rosales OLIVARES,


Appellant



v.



The STATE of Texas,


Appellee



From the 226th Judicial District Court, Bexar County, Texas


Trial Court No. 98-CR-3027


Honorable Bill White, Judge Presiding



Opinion by: Karen Angelini, Justice


Sitting: Catherine Stone, Justice

 Paul W. Green, Justice

 Karen Angelini, Justice


Delivered and Filed: May 17, 2000


AFFIRMED


 We withdraw our opinion and judgment of April 19, 2000, and substitute this opinion and
judgment in their place.

Nature of the Case

 A jury found that Jose Rosales Olivares committed the offense of aggravated assault with a
deadly weapon. The jury sentenced him to ten years imprisonment plus a $10,000 fine. Upon the
jury's recommendation, the trial court placed Olivares on community supervision and imposed the
fine.

 Olivares appeals his conviction in two issues, challenging the trial court's admission of two
different statements. In his first issue, Olivares alleges the trial court abused its discretion by
permitting the State to introduce a prior inconsistent statement to impeach its own witness. In his
second issue, Olivares complains the trial court erred in admitting a hearsay statement that could no
longer be characterized as an excited utterance. We disagree with Olivares's assertions and affirm
the trial court's judgment.

Factual Background

 On March 17, 1998, Diane Gallegos Olivares went with her mother, Rosy Gallegos Olivares,
to get her hair cut. They arrived back at their home at approximately six that evening. Jose Rosales
Olivares, Rosy's husband, reacted violently to Rosy's haircut. Initially, he paced in and out of the
house telling his wife he did not like her haircut. Later in the evening, he took out a gun and fired
it. His daughter Diane tried to intervene, struggling to take the gun from her father. Diane's attempt
was unsuccessful, so she dove on top of her mother to protect her. Jose shot the gun two more times,
hitting Rosy in the hand. 

Standard of Review

 The admission of evidence is a matter within the discretion of the trial court. See
Montgomery v. State, 810 S.W.2d 372, 378 (Tex. Crim. App.1990)(opinion on reh'g). Accordingly,
the trial court's admission of evidence is reviewed under an abuse of discretion standard. See id. at
379-80. As long as the trial court's ruling was within the "zone of reasonable disagreement," there
is no abuse of discretion and the trial court's ruling will be upheld. See Rachal v. State, 917 S.W.2d
799, 807 (Tex. Crim. App.1996); Montgomery, 810 S.W.2d at 391.

Prior Inconsistent Statement

 In his first issue, Olivares maintains the trial court erroneously permitted the State to
introduce Diane Olivares's prior inconsistent statement. Specifically, he alleges the State knew Diane
had changed her position regarding the events that occurred and that her testimony would be
unfavorable to its position. Despite his contention, Olivares failed to properly preserve his issue for
review. His objections in the lower court do not focus on the State's use of Diane's prior statement
as improper hearsay or impeachment evidence. See Tex. R. App. P. 33.1(a). Instead, they relate to
Diane's ability to explain the discrepancies in the contents of her testimony during the trial and her
prior statement. Therefore, we find Olivares waived his first issue. 

 Even if Olivares had properly preserved his first issue for review, we would still find the trial
court did not abuse its discretion by permitting the State to impeach Diane with her prior statement.
Generally, prior statements of a witness are considered hearsay if offered for their truth. See Miranda
v. State, 813 S.W.2d 724, 735 (Tex. App. - San Antonio 1991, pet. ref'd). However, the Texas
Rules of Evidence permit any party, including the party that called the witness, to use a witness's
prior inconsistent statements as a means of impeachment. See Tex. R. Evid. 607; Miranda, 813
S.W.2d at 735. 

 Although the rules regarding the admission of prior inconsistent statements are clear,
problems arise when a party calls a witness for the sole purpose of impeaching the witness and
placing before the jury substantive evidence which is otherwise inadmissible. The Court of Criminal
Appeals recently addressed this issue and provided the proper method for dealing with this type of
situation in Hughes v. State, 4 S.W.3d 1 (Tex. Crim. App. 1999). In Hughes, the court suggests that
in cases where it is unclear whether the State is aware that its witness will testify unfavorably, the
trial court should engage in an analysis similar to the Rule 403 balancing approach. Id. at 5. The
State's knowledge that its own witness will testify unfavorably is simply one factor the trial court
must consider in determining the evidence's admissibility. Id. Another factor to be used in
determining whether the party who called a witness may impeach that witness with a prior
inconsistent statement is whether the party offering the statement is doing so in reaction to the
witness's surprising or injurious testimony.(1) See Hughes, 4 S.W.3d at 5; Miranda, 813 S.W.2d at
734-35. 

 Other courts, in dealing with this type of situation, have found the State had knowledge of
a witness's likelihood to testify adversely to their cause when the witness had already recanted his
or her statement in prior sworn testimony at a previous trial or hearing. See Barley v. State, 906
S.W.2d 27, 37 n. 11 (Tex. Crim. App. 1995); Pruit v. State, 770 S.W.2d 909, 910 (Tex. App. - Fort
Worth 1989, pet. ref'd). Such knowledge allowed the courts to conclude that the State offered the
witness with the primary intent of placing inadmissible substantive evidence before the jury. See
Barley, 906 S.W.2d at 37 n.11. 

 Olivares presents facts that he alleges would indicate that the State knew Diane would be a
disfavorable witness to their cause. They include the fact that he and Rosy are back together, that
Diane had kept only one appointment with the prosecutor, that Diane had told the prosecutor she did
not want to talk to her, and that she did not want to continue with the prosecution against her father.
Olivares however, offers no evidence that Diane had recanted her statement before she testified.
Additionally, none of the facts he presents show conclusively that the State knew Diane would testify
inconsistently with her prior statement. We find Diane's prior inconsistent statement was used to
challenge her credibility. We therefore cannot conclude the trial court's decision to admit the
statement was outside the "zone of reasonable disagreement." We overrule Olivares's first issue.

Excited Utterance

 In his second issue, Olivares contends that the trial court erred in admitting statements made
by Diane to a police detective at the hospital four hours after the shooting. He maintains this time
period is too long to allow the contested statement to be an excited utterance. We disagree.

 The excited utterance exception to the hearsay rule applies when the declarant remains "under
the stress of excitement caused by the event or condition." Tex. R. Evid. 803. The pivotal factor in
determining whether a statement is an excited utterance is "whether the declarant was still dominated
by the emotions, excitement, fear or pain of the event." See Lawton v. State, 913 S.W.2d 542, 553
(Tex. Crim. App. 1995). Time lapse between the occurrence of the event and the utterance is but one
factor to be considered in assessing the admissibility of the hearsay statement. See id.

 The time Diane made her statement to the police detective is in dispute. The police detective
who took Diane's statement testified he did so at 12:30 a.m., approximately two hours after the
shooting. Olivares asserts that the statement was taken after Diane and her mother were admitted to
the hospital at 2:41 a.m. The police detective additionally testified that at the time Diane made her
statement she was excited, crying, and upset. In light of the violent nature of the offense, the fact that
Diane's father shot at her and her mother, and that her mother was actually hit, we cannot find that
the trial judge abused his discretion in admitting Diane's statement as an excited utterance, despite
the two to four hour time lapse.

Conclusion

 Because we find the trial court did not abuse its discretion in admitting Diane's statements,
we overrule Olivares's two issues. The trial court's judgment is affirmed. 

 

 Karen Angelini, Justice

DO NOT PUBLISH


1. Prior to the development of the Texas Rules of Evidence, the law required the party calling the witness to
show surprise or injury before the party could impeach its own witness. See Barley v. State, 906 S.W.2d 27, 37 n.11
(Tex. Crim. App. 1995). Although this is no longer the case, the Court of Criminal Appeals announced that analyzing
the lack of surprise or injury is preferable in situations where a party chooses to impeach its own witness. See Hughes,
4 S.W.3d at 5.